**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

YUHONG REN AND GUOJI CHU,

Petitioners,

v.

JAMES JANECHA, ET AL.,

Respondents.

Case No. 5:26-cv-04364-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On August 4, 2026, Petitioners Yuhong Ren (A# 236-934-757) and Guoji Chu (A# 236-934-758) (collectively, "Petitioners"), immigration detainees represented by counsel, filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Petition"), challenging their detention in immigration custody. (Dkt. 1 at 2-3.) On August 11, 2026, Respondents James Janecha, Jaime Rios, Field Office Director, Adelanto Office of Detention and Removal, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security ("DHS"), Todd M. Lyons, Acting Director, ICE, DHS, Todd

Blanche, Attorney General of the United States, and Markwayne Mullin, Secretary of DHS (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 7.) On August 12, 2026, Petitioners filed a Reply to the Answer (the "Reply"). (Dkt. 9.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 8.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioners from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 16.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 7.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioners are natives and citizens of the People's Republic of China. (Dkt. 1 at 7.) They are husband and wife. (Id.) They fled China because they suffered past persecution and fear future persecution if returned. (Id.)

On January 13, 2026, Petitioners were inspected and lawfully admitted to the United States on valid B-1/B-2 nonimmigrant visas at Los Angeles. (Id.) They did not enter without inspection. (Id.) In or about July of 2026, Petitioners timely filed affirmative applications for asylum (Form I-589) with U.S. Citizenship and Immigration Services ("USCIS"). (Id.) Those applications remain pending. (Id.) Petitioners have a strong incentive to appear and prosecute their asylum applications because they fear persecution if returned to China. (Id.) Since their admission, Petitioners have lived openly at a known address, established community ties, and

maintained a spotless record with no criminal history whatsoever. (Id.) They have never before been detained. (Id.)

In connection with their pending asylum applications, USCIS issued Petitioners Form I-797C Notices of Action directing them to appear at the USCIS El Monte Application Support Center for biometrics collection. (Id.) Each notice warned that failure to appear would result in an applicant-caused delay and that USCIS may dismiss the asylum application and refer their application to an immigration judge. (Id.) Petitioners did exactly what the Government asked of them and went to the USCIS office as directed. (Id.) On July 31, 2026, Petitioners appeared together as the USCIS El Monte Application Support Center, so that their biometrics could be completed. (Id. at 7-8.) While Petitioners were inside the USCIS office, ICE officers arrested them without a judicial warrant, without any prior notice, and without a hearing. (Id. at 8.)

Petitioners were then transported to and delivered to the Adelanto ICE Processing Center, where they have remained in continuous custody since July 31, 2026. (Id.) Following their arrest, Petitioners were placed in removal proceedings before the immigration court at Adelanto. (Id. at 9.) Both cases remain pending. (Id.) No decision has issued, no appeal is on file, and no final order of removal exists. (Id.) Petitioners' confinement is causing them ongoing harm. (Id.) They have provided a declaration stating that they are very sad and depressed, and are having trouble sleeping. (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioners' first claim for relief (Count One) is that their detention without notice and a pre-deprivation hearing violated their procedural due process rights. (Dkt. 1 at 13-14.) Petitioners' second claim for relief (Count Two) is that their detention untethered to any permissible purpose violates their substantive due

process rights. (Id. at 14.) Petitioners seek immediate release from custody and prospective injunctive relief enjoining their re-detention absent notice and a constitutionally adequate pre-deprivation hearing. (Id. at 15.) Petitioners also seek an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id.)

## IV.
## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth

in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal

quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioners were inspected and lawfully admitted to the United States on valid B-1/B-2 nonimmigrant visas at Los Angeles. (Dkt. 1 at 7.) It is further undisputed that Petitioners fled China because they suffered past persecution and fear future persecution if returned. (Id.) Petitioners filed timely applications for asylum with USCIS that remain pending. (Id.) Since their admission, Petitioners have lived openly at a known address, established community ties, and maintained a spotless record with no criminal history whatsoever. (Id.) Based on these undisputed facts, the Court concludes that Petitioners developed a substantial liberty interest in remaining out of custody based on their lawful admission into the United States and the community ties they established since their admission. See, e.g., Kharitonova v. Albarran, 2026 WL 531441 at *2 (N.D. Cal. Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioners' arrest on July 31, 2026, without prior notice or a pre-deprivation hearing violated their procedural due

process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given this violation of Petitioners' due process rights, the Court concludes that "Petitioner[s'] release is necessary to return [them] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioners' release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioners could receive a post-deprivation bond hearing pursuant to Rodriguez Vazquez v. Bostock, __ F.4th __, 2026 WL 2196424 (9th Cir. 2026), does not remedy the violation of Petitioners' procedural due process rights. See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)

("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioners' due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioners may be re-detained.[1] See, e.g., Ixchop Perez

---

[1] As set forth above, Petitioners have a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because Petitioners were inspected and lawfully admitted into the United States, they timely filed applications for asylum, and they have no criminal history. (Dkt. 1 at 7.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioners without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioners are a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioners' future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioners have made such a showing here. Petitioners have suffered an irreparable injury by being detained in violation of their due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the

unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioners, versus forcing Petitioners again to suffer detention and file a habeas petition to secure their release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[2]

Thus, the Court concludes that Petitioners have made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).[3]

Finally, the Court notes that Petitioners also requested an award of reasonable attorneys' fees and costs under the EAJA. (Dkt. 1 at 15.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

---

[2] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

[3] Respondents failed to respond to Petitioners' clearly presented due process claims requesting both immediate release and prospective injunctive relief. (Dkt. 1 at 13-15.) Therefore, Respondents have consented to the relief requested in the Petition. See C.D. Cal. L.R. 7-12.

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioners Yuhong Ren (A# 236-934-757) and Guoji Chu (A# 236-934-758) (collectively, "Petitioners") from custody (subject only to conditions that were in place prior to their July 31, 2026 detention, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioners pursuant to 8 U.S.C. § 1226 without providing each of them at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioners are a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioners' future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of each Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: August 17, 2026

Joel Richlin

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE